## PEARSALL v. UNITED STATES.
### No. J–35.

Court of Claims.
Nov. 2, 1931.

See, also, 49 F.(2d) 661.

1054

Jesse I. Miller, of Washington, D. C., for plaintiff.

Lisle A. Smith, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The plaintiff contends that a contract which he had with the Burden Iron Company for the exclusive right to sell the product of that company known as stay bolt and engine bolt iron had a fair market value of at least $75,000 on March 1, 1913, and, further, plaintiff insists that Gardner, Linton, and MacMillan, associates of the plaintiff, had a 40 per cent. interest in the contract, and therefore were entitled to 40 per cent. of the proceeds of the sale; that the gross profit of $71,000 to the plaintiff in the transaction of September 12, 1918, should be reduced, so far as he is concerned, by the amount of $30,800, representing the total of the payments made to Gardner, Linton, and MacMillan.

On the other hand, the defendant contends that the Commissioner of Internal Revenue was correct in holding that the stock of the Burden Sales Company on March 1, 1913, which was represented by the value of the Burden Iron Company contract on that date, had no fair market price or value, and that the entire amount of $71,000 received by plaintiff represented profit to him; that this profit should not be reduced by the amount which he had agreed to pay and would pay to Gardner, Linton, and MacMillan.

The defendant argues, first, that plaintiff paid nothing for the contract, and that it necessarily follows that at the time the contract was made the Burden Iron Company expected to receive in services from plaintiff the equivalent in value of commissions which it expected to pay for those services; that the effective date of the contract was January 15, 1913, and that nothing happened between that date and March 1, 1913, which would have any bearing upon the question of value; that, in the absence of anything having been paid by the plaintiff for the contract at the time of its consummation, the services to be rendered by him thereunder equaled and were equivalent to the commissions expected to be paid therefor by the Burden Iron Company, and that the contract had no bonus value on March 1, 1913.

The defendant further insists there is no basis in this case for the application of the rule sometimes applied in determining value by capitalizing profits less reasonable compensation for services rendered and actual expenses incurred in the performance thereof, for the reason that under the facts disclosed by the record there existed no reason on March 1, 1913, to anticipate that the commissions received under the sales contract would be more than a fair compensation for the services rendered and the expenses incurred, there being no change in conditions between January 15 and March 1, 1913, which would indicate at that time that operations under the sales contract would become profitable; that, in these circumstances, the personal services to be rendered under the contract were expected to be equal to the commissions which the other parties thereto expected to pay.

The contract which plaintiff had with the Burden Iron Company gave him an exclusive sales agency for what is known as stay bolt and engine bolt iron used in the construction and repair of railway locomotives. This product was used in bolting the boilers of the locomotive upon an angular part, or chassis. The locomotive is subjected to very severe strains both by reason of internal pressure and locomotion, and the strain is greatest at the point where the boiler is bolted to the chassis. A specialized type of iron is, therefore, necessary in bolting together the boiler and the chassis. Such iron is known as stay bolt iron. Engine bolt iron is of a similar type, and is used for bolting certain other portions of a locomotive where severe stress must be withstood.

In 1912 there were only six concerns in the United States manufacturing a grade of iron suitable for stay bolt and engine bolt purposes, and the Burden Iron Company was one of this number.

Stay bolt and engine bolt iron constituted only a small percentage of the total railway iron requirements of American railroads, and, for this reason, iron companies had paid little attention to its development and sale. On the other hand, a universal need existed for it, and where an active campaign was made for this type of business, large sales and considerable profits were apparent.

The Burden Iron Company contract gave to plaintiff an exclusive sales agency for a type of iron manufactured by only five competitors, for which there was a steady demand by all railroads of the country and the larger part of this business would naturally go to those of only six companies which made the most attractive campaign to secure it. While the Burden contract did not give to its owner a monopoly on the sale of engine iron, in view of the fact that only six companies were manufacturing it, and, of these, only one other was actively exploiting it, the Burden contract offered prospects for future earnings which, to a certain degree to say the least, could be reasonably anticipated.

The value of the Burden contract did not altogether lie, as the government contends, in plaintiff's personal service to be rendered in connection with it, but lay in a large measure in the exclusive sales agency given for a material portion of a limited supply of a highly specialized type of iron. Plaintiff's long experience in this field of activity and his personal acquaintance with the trade did doubtless contribute to the value of the contract on March 1, 1913; nevertheless, we think under the circumstances that the contract would have been of substantial value whether in the hands of the plaintiff or any other person familiar with the railway iron business. We are unable to say, however, from the facts and circumstances as disclosed by the record, that the Burden Iron Company's sales agency contract had a fair market price or value of $75,000 on March 1, 1913, as contended by plaintiff. While we think the contract had a substantial market value on March 1, 1913, this value cannot be predicated upon the comparatively large earnings for 1916, 1917, and 1918, inasmuch as those earnings to a very substantial degree were attributable to a demand for steel and iron resulting from circumstances that were not known and could not reasonably have been anticipated on that date.

Another circumstance to be considered is the fact that the consent of the Burden Iron Company was necessary to the sale or transfer of the contract. Upon consideration of all the facts and circumstances, as disclosed by the record, we are of opinion that the fair market price or value of the stock of the Burden Sales Company, Inc., all of which was owned by plaintiff on March 1, 1913, and which was represented by the value of the Burden Sales Company contract, was $25,000, and we have so found.

Upon the liquidation of the Burden Sales Company, Inc., and the cancellation of the Burden Iron Company contract on September 12, 1918, and the receipt by plaintiff from this transaction of $77,000 in cash and notes having an equivalent cash value of $71,000, plaintiff paid to Gardner $15,400, to Linton $7,700, and to MacMillan $7,700, totaling $30,800, being 20 per cent., 10 per cent., and 10 per cent., respectively, in accordance with the agreement between the plaintiff and these gentlemen, in January, 1913, shortly prior to the organization of the Burden Sales Company, Inc., and the transfer to it by plaintiff of the Burden Iron Company contract in exchange for its entire capital stock.

On this point the Commissioner of Internal Revenue held that the amounts paid to Gardner, Linton, and MacMillan represented additional salary or bonus; that plaintiff did not make the payments to them until 1919, and that therefore they were deductible by him, if at all, from gross income for 1919 instead of 1918; that, while it might have been a deductible item by the corporation had it been paid to plaintiff, it was not a proper deduction by plaintiff in determining his profit from the transaction. We think the payments in question were neither salary nor bonus. Under the agreement made early in January, 1913, Gardner, Linton, and MacMillan acquired an interest of 20, 10, and 10 per cent., respectively, in the Burden Iron Company contract and the same interest in any amount for which the Burden Iron Company contract might be sold. The amounts which they received in 1918 therefore represented this interest which vested in them at the time of the agreement. In these circumstances plaintiff was entitled to receive as his own and was taxable only upon 60 per cent., or $42,600, of the proceeds of the liquidation of the Burden Sales Company, Inc., and the sale of the contract to the Burden Iron Company on September 12, 1918. Forty per cent.

thereof, or $30,800, belonged to and was the property of Gardner, Linton, and Mac-Millan. The record discloses that complete and final settlement was made September 16, 1918, four days after the liquidation of the Burden Sales Company, Inc., and the payment of the purchase price by the Burden Iron Company. At that time these three men received $30,800 due them on the sale, with certain minor adjustments not here material; of this amount $17,000 had been received in cash from the sale, and the balance was made up by plaintiff from his personal funds. On March 1, 1913, plaintiff owned only a 60 per cent. interest in the Burden Iron Company contract, and his taxable profit upon the liquidation of the Burden Sales Company and the sale of the contract to the Burden Iron Company on September 12, 1918, was $27,600, representing the difference between the aforementioned amount of $42,600 received by him and $15,000, the March 1, 1913, value of his interest in the contract.

Plaintiff is entitled to recover, but entry of judgment will be withheld to await filing by the parties of a computation, or stipulation, showing the exact amount of overpayment of tax for 1918, computed in accordance with the foregoing opinion. It is so ordered.